**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No.  06-cv-00401-REB-PAC

STEVE MCINTYRE and
KIMBERLY MCINTYRE,

    Plaintiff(s),

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF GUNNISON,
COLORADO,

    Defendant(s).

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
AND
DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

**Blackburn, J.**

The matters before me are (1) defendant's **Motion To Dismiss** [#10], filed

August 7, 2006; and (2) **Plaintiffs' Motion for Partial Summary Judgment on**

**Defendant's Liability For a Temporary Taking** [#63], filed December 22, 2006.  With

the consent of the magistrate judge, I withdraw the orders referring these motions to the

magistrate judge ([#11], filed August 7, 2006, and [#65], filed December 26, 2006,

respectively).  I grant defendant's motion, deny plaintiffs' motion as moot, and dismiss

plaintiffs' claims.

**I.  JURISDICTION**

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal

question) and 1332 (diversity of citizenship).

## II.  STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), I must determine whether the allegations set forth in the complaint, if true, are sufficient to state a claim within the meaning of Fed.R.Civ.P. 8(a).  I must accept all well-pleaded allegations of the complaint as true.  *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002).[1]  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278, 284 (5th Cir. 1993); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."), *cert. denied*, 123 S.Ct. 1908 (2003).  Thus, Rule 12(b)(6) requires dismissal if, taking all well-pleaded facts as true and construing them in the light most favorable to plaintiffs, it is clear that they can prove no set of facts entitling them to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Rocky Mountain Helicopters, Inc., v. Bell Helicopter Textron, Inc.*, 24 F.3d 125, 128 (10th Cir. 1994).

With respect to plaintiffs' summary judgment motion, summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.  *Matsushita Electric Industrial Co.,*

---

[1]  However, I may consider documents referenced in or attached to the complaint and central to plaintiffs' claims without transforming the motion into one for summary judgment.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997).

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A movant who will bear the burden of proof at trial must submit evidence to establish every essential element of her claim or affirmative defense.  *See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995).  All the evidence must be viewed in the light most favorable to the party opposing the motion.  *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999).

### III. ANALYSIS

This litigation concerns 62 acres of land comprising six mining claims in Marble, Gunnison County, Colorado, which plaintiffs purchased in 1994.  A quarry owned by the Colorado Yule Marble Company adjoins plaintiffs' property.  An old electric tramway route provides access to the quarry, a portion of which traverses plaintiffs' property as a footpath.  Concerned about liability associated with the path's deteriorating condition

and trash left by persons traversing their property, plaintiffs closed public access to the footpath in the mid-1990's.[2]

Defendant thereafter filed a quiet title action against plaintiffs in Gunnison County District Court on June 17, 1998, seeking to acquire the trail for public use as a public prescriptive highway. *See* §43-2-201(1)(c), C.R.S. Defendant obtained a temporary restraining order prohibiting plaintiffs from excluding the public from using the trail on June 26, 1998. That order later matured into first a preliminary injunction and later a permanent injunction after the state court found that the trail had become a public road by prescription pursuant to §43-2-201(1)(c), C.R.S., and granted defendant's motion for summary judgment. The Colorado Court of Appeals affirmed the district court's order, but the Colorado Supreme Court ultimately reversed, finding that defendant had failed to meet the claim of right requirement of §43-2-201(1)(c) for the establishment of a public road by prescription, and remanded for further proceedings.

On May 5, 2004, the state district court held a status conference, at which time it continued the preliminary injunction in force, pending motions by the parties. On plaintiffs' motion, the court dissolved the injunction on June 17, 2004. The following day, defendant filed an emergency motion to stay execution of the dissolution order, which the district court granted on June 21 without a hearing or otherwise awaiting a response from plaintiffs. On July 19, 2004, however, the court lifted the stay and again

---

[2] The path apparently receives a fair amount of foot traffic, as marble from the quarry was used in the Lincoln Memorial, the Tomb of the Unknown Soldier, and other public buildings of note. For this same reason, the site "has significant historical and tourist value to the Town of Marble and Gunnison County." *McIntyre v. Board of County Commissioners, Gunnison County*, 86 P.3d 402, 405 (Colo. 2004).

dissolved the injunction.  Finally, on May 25, 2005, the state court entered judgment

and a quiet title decree in favor of plaintiffs.[3]

This lawsuit followed.  Herein, plaintiffs assert claims for inverse condemnation

under the Colorado Constitution and for violation of their federal constitutional

substantive and procedural due process rights.[4]  Defendant moves to dismiss all

plaintiffs' claims for failure to state claims on which relief may be granted.  Plaintiffs

move for partial summary judgment on their inverse condemnation claim.

I address the inverse condemnation issue first.  The Colorado Constitution

provides that "property shall not be taken or damaged, for public or private use, without

just compensation."  **COLO. CONST.** Art, II, §15.[5]  Defendant argues first that plaintiffs'

inverse condemnation claim should be dismissed as untimely under the applicable

statute of limitations.  Under Colorado law, which governs both the limitations period

and the accrual rules, ***Burnham v. Humphrey Hospitality Reit Trust, Inc.***, 403 F.3d

709, 712 (10th Cir. 2005), actions against any public or governmental entity must be

brought within two years after the cause of action accrues, §13-80-102(1)(h), C.R.S.;

***see also Bad Boys of Cripple Creek Mining Co. v. City of Cripple Creek***, 996 P.2d

---

[3]  That decision was affirmed by the court of appeals.  Defendant filed a petition for certiorari this past fall, which petition is still pending before the Colorado Supreme Court as of the date of this order.

[4]  Plaintiffs assert also a fourth claim for attorney and expert fees under 42 U.S.C. § 1988. However, such a request is not properly asserted as a separate claim for relief.  ***See Brown v. Reardon***, 770 F.2d 896, 907 (10th Cir. 1985) ("[Section] 1988 defines procedures under which remedies may be sought in civil rights actions, but it does not create independent causes of action.").

[5]  Inverse condemnation is a claim for relief brought by a landowner against a government defendant for "the 'taking' of private property for public or private use, without compensation, by a governmental or public entity which has refused to exercise its eminent domain power." ***Fowler Irrevocable Trust 1992-1 v. City of Boulder***, 17 P.3d 797, 802 (Colo. 2001) (citation and internal quotation marks omitted).

792, 795 (Colo. App. 2000) (noting that §13-80-102(1)(h), C.R.S., is applicable to inverse condemnation claims).  The cause of action accrues when "both the injury and its cause are known or should have been known by the exercise of reasonable diligence."  §13-80-108(1), C.R.S.

Defendant argues that plaintiffs' inverse condemnation claim accrued on June 26, 1998, the date the state district court first entered its temporary restraining order. Plaintiffs counter that their claim is for a "temporary taking" during the pendency of the state court proceedings, which did not accrue until the state court's final decree of May 25, 2005, adjudging plaintiffs the fee simple owners of the trail.  As plaintiffs see it, their claim could not have accrued before this date because they did not have a demonstrable property interest and could not have known the extent of their damages until the district court ruled in their favor.

I am not persuaded.  Federal jurisprudence recognizes two types of takings: physical, or *per se*, takings, and regulatory takings.  ***See Yee v. City of Escondido, California***, 503 U.S. 519, 522-23, 112 S.Ct. 1522, 1526, 118 L.Ed.2d 153 (1992).[6]  A physical taking occurs "where individuals are given a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed."  ***Nollan v. California Coastal Commission***, 483 U.S. 825, 832,107 S.Ct. 3141, 3146, 97 L.Ed.2d 677 (1987).  Importantly, physical takings are deemed to be permanent in nature, even if they operate for a limited term.  ***See Skip Kirchdorfer, Inc. v. United States***, 6 F.3d

---

[6]  Because the Colorado takings clause is consistent with, and at least as broad as, the Fifth Amendment Takings clause, federal caselaw is instructive in deciding inverse condemnation claims under the Colorado Constitution.  ***Animas Valley Sand and Gravel, Inc. v. Board of County Commissioners of the County of La Plata***, 38 P.3d 59, 64 (Colo. 2001).

1573, 1582 (Fed. Cir. 1993) ("[T]he distinction between "permanent" and "temporary"
takings refers to the nature of the intrusion, not its temporal duration."); *see also*
*Hendler v. United States*, 952 F.2d 1364, 1376 (Fed. Cir. 1991). By contrast, a
regulatory taking occurs "when a regulatory or administrative action places such
burdens on ownership of private property that essential elements of such ownership
must be viewed as having been taken." *Kemp v. United States*, 65 Fed. Cl. 818, 821
(2005) (quoting *Hendler v. United States*, 36 Fed. Cl. 574, 585 (1996), *aff'd*,175 F.3d
1374 (Fed. Cir. 1999)). Regulatory takings may be temporary in nature. *See Sartori v.
United States*, 67 Fed. Cl. 263, 267 (Fed.Cl. 2005) (citing *Lucas v. South Carolina
Coastal Council*, 505 U.S. 1003, 1017, 112 S.Ct. 2886, 2894, 120 L.Ed.2d 798 (1992),
*and Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124, 130-31,
98 S.Ct. 2646, 2662-63, 57 L.Ed.2d 631 (1978)).

It is clear that plaintiffs here allege a physical, as opposed to a regulatory, taking,
albeit one of limited duration.[7] They, therefore, cannot, simply by characterizing their
inverse condemnation claim as involving a "temporary taking," reap the benefit of
jurisprudence regarding temporary regulatory takings.[8] More importantly, none of the

---

[7] Plaintiffs argue also in their reply brief that the continuing violation doctrine prevented the
statute of limitations from running on their inverse condemnation claim because they have alleged five
discrete events that resulted in a taking of their property. Even if I were to consider such a belatedly
raised argument, *see Liebau v. Columbia Casualty Co.*, 176 F.Supp.2d 1236, 1244 (D. Kan. 2001)
(court does not consider issues raised for the first time in a reply brief), Colorado case law is to the
contrary, *see State, Department of Health v. The Mill*, 809 P.2d 434, 439 n.5 (Colo. 1991) (recognizing
that a physical taking cannot be continuous).

[8] Moreover, if plaintiffs' argument is correct, their inverse condemnation claim is premature, as
the state court's May 25, 2005, judgment is still on appeal. As of the date of this Order, the County's
petition for certiorari is still pending. Accordingly, if I were to agree with plaintiffs that their inverse
condemnation claim does not accrue until the state court litigation definitively establishes their rights in
the trail, I would be compelled to dismiss the claim on ripeness grounds.

authority on which plaintiffs rely stands for the proposition for which plaintiffs seek to invoke it.  Although the permanent/temporary distinction is important for purposes of what compensation is due, "[w]hether a physical taking is permanent or temporary is irrelevant to the application of the statute of limitations because the accrual date is the same for both." **Roth v. United States**, 73 Fed. Cl. 144, 149 (Fed. Cl. 2006) (citation and internal quotation marks omitted).[9]  Under either rubric, the limitations period begins to run at the time of the taking.  **See Kemp**, 65 Fed. Cl. at 824; **Caldwell v. United States**, 391 F.3d 1226, 1235 (Fed. Cir. 2004). The same is true of inverse condemnation claims.  **Bad Boys of Cripple Creek Mining Co.**, 996 P.2d at 796; **State, Department of Health v. The Mill**, 809 P.2d 434, 439 n.5 (Colo. 1991).  A taking occurs when the owner is deprived of use.  **Roth**, 73 Fed. Cl. at 149.

Plaintiffs here were first deprived of the use of their property in June 26, 1998, when defendant obtained the temporary restraining order prohibiting plaintiffs from excluding the public from using the trail.  **See Loretto v. Teleprompter Manhattan CATV Corp.**, 458 U.S. 419, 435, 102 S.Ct. 3164, 3176, 73 L.Ed.2d 868 (1982) (describing right to exclude others as a protected property right).[10]  The statute of

---

[9]  For this reason, plaintiffs' reliance on **Fowler Irrevocable Trust 1992-1 v. City of Boulder**, 17 P.3d 797, 802 (Colo. 2001), in support of their arguments in this regard is misplaced.  The Colorado Supreme Court in **Fowler** considered whether a "temporary" taking occurred for purposes of determining the measure of compensation due the plaintiff, which depends on whether the duration of the taking is permanent or temporary.  **Id**. at 803-804.  For purposes of determining when the statute of limitations accrues, however, **Fowler** is inapposite.  **See Skip Kirchdorfer, Inc.**, 6 F.3d at 1583 ("The limited duration of this taking is relevant to the issue of what compensation is just, and not to the issue of whether a taking has occurred.").

[10]  Indeed, plaintiffs filed an inverse condemnation counterclaim in the state court action, but, for reasons which are not apparent from the record, voluntarily dismissed that claim without prejudice *after* the Colorado Supreme Court reversed the judgment in favor of defendant.

limitations on their inverse condemnation claim therefore accrued no later than June, 26, 2000.  Plaintiffs' inverse condemnation claim, filed March 7, 2006, is, therefore, time barred.  Accordingly, defendant's motion to dismiss that claim should be granted and plaintiffs' motion for partial summary judgment as to that claim denied.

Plaintiffs assert also claims for violation of their rights to procedural and substantive due process under the federal Constitution.  These claims, which are premised on defendant's temporarily successful attempts to have the injunction reinstated after the Colorado Supreme Court reversed the judgment in favor of defendant, fail to withstand scrutiny under Rule 12(b)(6).

Plaintiffs claim that they were not afforded procedural due process in connection with (1) the court's May 5, 2004, decision to continue the June, 1999, preliminary injunction following remand; and (2) defendant's emergency motion of June 18, 2004, to stay enforcement of the district court's order dissolving that injunction.  The first action simply is not attributable to defendant.  The district court held a status conference on May 5, 2004, at which time it continued the original preliminary injunction "subject to motions by any party."  It does not appear that defendant ever moved for any such relief, but rather that the court acted *sua sponte*.  Any failure of notice or opportunity for a meaningful hearing, therefore, rests with the district court, not defendant.[11]

As for the motion for emergency stay, defendant served notice of its motion on

---

[11]  Moreover, it appears clear that plaintiffs received appropriate process in connection with the status conference itself.  Plaintiff Kimberly McIntyre appeared by phone at that hearing, and plaintiffs received a copy of the Minute Order memorializing the content of the status conference.

plaintiffs via certified mail, as contemplated by C.R.C.P. 5(b).  The motion was not filed

*ex parte* or indeed with any request that it be ruled on without affording plaintiffs an

opportunity to respond or be heard.  The fact that the district court ruled on the motion

without hearing from plaintiffs was not a matter over which defendant exerted or could

exert any control.  In short, there is a logical disconnect between the alleged

constitutional violation and the party sought to be held accountable.  The procedures

plaintiffs were allegedly denied are not traceable to the opposing party in litigation.  For

these reasons, I find that plaintiffs have failed to state a viable procedural due process

claim, and defendant's motion to dismiss that claim should be granted.

I find further that plaintiffs have failed to state a claim based on these same

events for violation of their substantive due process rights.  Assuming *arguendo* that

such claim is not subsumed by the more specific guarantees of the Takings Clause, the

actions of which plaintiffs complain do not even approximate the level of

outrageousness necessary to assert a substantive due process claim.

"[I]n a due process challenge to executive action, the threshold question is

whether the behavior of the governmental officer is so egregious, so outrageous, that it

may fairly be said to shock the contemporary conscience."  **County of Sacramento v.**

**Lewis**, 523 U.S. 833, 847 n.8, 118 S.Ct. 1708, 1717 n.8, 140 L.Ed.2d 1043 (1998).

Conduct is "conscience shocking" only when it involves deliberately wrongful

government conduct.  **Collins v. City of Harker Heights**, 503 U.S. 115, 127 n.10, 112

S.Ct. 1061, 1069 n.10, 117 L.Ed.2d 261 (1992); **see also Uhlrig v. Harder**, 64 F.3d

567, 573 (10th Cir. 1995), **cert. denied**, 116 S.Ct. 924 (1996).  Such deliberateness is

established if defendant's conduct manifests either an intent to harm or reckless conduct, that is, an "aware[ness] of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences." *Uhlrig*, 64 F.3d at 573-74 & n.8.

It should be apparent that this standard is exceedingly high.  Actions far more egregious than the brief continuation of an injunction barring a litigant from the full enjoyment of her real property have failed to satisfy it.  *See, e.g.*, *Harris v. Robinson*, 273 F.3d 927, 929 (10th Cir. 2001) (no substantive due process violation where a teacher required mentally retarded ten-year-old boy to clean out a clogged toilet with his bare hands); *Williams v. Berney*, 2006 WL 753208 at *5 (D. Colo. March 20, 2006) (slip op.) (no substantive due process violation stated where state business license inspector assaulted plaintiff without provocation, causing him severe physical injuries and a later stroke); *Robbins v. Bureau of Land Management*, 252 F.Supp.2d 1286, 1300 (D. Wyo. 2003) (allegations that government officials threatened plaintiff, trespassed on his property, and convinced the U.S. Attorney's Office to prosecute him did not state cause of action for substantive due process); *Gonzales v. Passino*, 222 F.Supp.2d 1277, 1282 (D.N.M. 2002) (no substantive due process violation stated on allegations that teacher struck recalcitrant student on the arm with a plastic bat). Defendant's efforts in the state court to zealously prosecute its case simply are not the stuff of which viable substantive due process claims are made.  Defendant's motion to dismiss this claim, therefore, must be granted.

**THEREFORE, IT IS ORDERED** as follows:

1.  That, with the consent of the magistrate judge, the **Memorandum** [#11], filed August 7, 2006, referring defendant's **Motion To Dismiss** to the magistrate judge, as well as the **Memorandum** [#65], filed December 26, 2006, referring **Plaintiffs' Motion for Partial Summary Judgment on Defendant's Liability For a Temporary Taking** to the magistrate judge, are **WITHDRAWN**;

2.  That defendant's **Motion To Dismiss** [#10], filed August 7, 2006, is **GRANTED**;

3.  That all plaintiffs' claims for relief and causes of action asserted in this lawsuit are **DISMISSED WITH PREJUDICE**;

4.  That judgment **SHALL ENTER** on behalf of defendant, the Board of County Commissioners of the County of Gunnison, and against plaintiffs, Steve McIntyre and Kimberly McIntyre;

5.  That **Plaintiffs' Motion for Partial Summary Judgment on Defendant's Liability For a Temporary Taking** [#63], filed December 22, 2006, is **DENIED**;

6.  That any other motion currently pending in this action is **DENIED AS MOOT**;

7.  That the Trial Preparation Conference currently scheduled for November 9, 2007, at 9:30 a.m., as well as the trial currently scheduled to commence on November 26, 2007, are **VACATED**; and

8.   That defendant is **AWARDED** its costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated March 26, 2007, at Denver, Colorado.

BY THE COURT:

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**